# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID DAVENPORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:14-cv-0207-JMS-WGH |
| | ) | |
| BRIAN RODGERS, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Defendant's Motion for Summary Judgment,
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 30] is **granted.**

## I. Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is David Davenport ("Mr. Davenport"), who at all relevant times was a pretrial detainee awaiting trial at the Marion County Jail ("the Jail"). He is currently confined at the Putnamville Correctional Facility. The remaining defendant is Brian Rodgers ("Mr. Rodgers"), a civilian mail clerk at the Jail.

Mr. Davenport alleges that Mr. Rodgers violated his First Amendment rights when Mr. Rodgers without consent opened and read two of Mr. Davenport's letters that he wrote while in the Jail and then gave the letters to the Marion County Prosecutor who used the letters as evidence in Mr. Davenport's criminal trial. Mr. Davenport seeks compensatory and punitive damages.

The defendant seeks resolution of Mr. Davenport's claims through the entry of summary judgment. Mr. Davenport has opposed the motion for summary judgment and the defendant has replied.

## II. Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III. Discussion

*A. Undisputed Facts*

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. Davenport as the non-moving party, the following facts are undisputed for purposes of the motion for summary judgment:

On or about October 3, 2011, while Mr. Davenport was detained in the Jail, he wrote a letter to his nephew and placed the letter in an envelope addressed to "Cuz and Cuz." Mr.

Davenport delivered the letter to personnel at the jail who deposited the letter in the U.S. Mail, but the U.S. Post Office returned it to the Jail for insufficient postage. Mr. Rodgers was employed at the Jail as a civilian mail clerk. His duties included randomly checking inmate non-legal mail.

Many inmates in jails are prohibited from communicating with other inmates. For example, inmates might be prohibited from communicating with each other for reasons of institutional safety and security, to protect inmate "victims" from inmate "aggressors," or to prevent co-defendants awaiting trial from coordinating their trial testimony. In order to get around this prohibition, it is a common tactic for inmates to address a letter to someone outside the jail and write the name of some other inmate with whom they are prohibited from communicating in the upper left hand corner as the sender. Inmates then put insufficient postage on the envelope, calculating that when it is returned for insufficient postage, it will be given to the inmate with whom they are prohibited from communicating. Consequently, when Mr. Davenport's letter addressed to "Cuz and Cuz" was returned to the Jail for insufficient postage, it appeared to Mr. Rodgers that the letter could possibly be an improper attempt by one inmate to communicate with another inmate. Dkt. 32-3, p. 12. Mr. Rodgers opened the letter and read it "to see if it was inmate to inmate or not." *Id*.

It appeared to Mr. Rodgers that the letter was Mr. Davenport's written confession to the crimes with which he was charged and, in fact, Mr. Davenport concedes that the letter "was like a signed confession." Dkt. 1-1, pp. 7-8; Dkt. 32-4, p. 10. Mr. Rodgers was not a "sworn officer" or an "investigator." Therefore, when he found letters containing any potentially valuable information, he had been ordered and was expected to pass those letters on to his superiors. Accordingly, he gave the letter addressed to "Cuz and Cuz" to Corporal Cory McGriff with the Marion County Sheriff's Office's Special Investigation Unit. The Special Investigation Unit and Corporal McGriff are within Mr. Rodger's chain of command as his supervisors. His supervisors

then instructed him to monitor Mr. Davenport's mail.

A couple of days later, on or about October 10, 2011, Mr. Davenport personally handed Mr. Rodgers a letter. The letter was addressed to Mr. Davenport's girlfriend, Joyce Davenport. Mr. Rodgers read the letter. The letter told Ms. Davenport what Mr. Davenport wanted her to say when she went to court to testify at his criminal trial. Dkt. 1-1, p. 9. Mr. Rodgers gave the letter to the Special Investigation Unit. The Special Investigation Unit then gave both the letter addressed to "Cuz and Cuz" and the letter addressed to Ms. Davenport to the Marion County Prosecutor.

When inmates are booked into the Jail they are given an "Inmate Handbook" which provides general information about the Jail, including the services available to inmates and the rules of behavior by which they are expected to abide. The Inmate Handbook provides, in relevant part:

> All mail for inmates, both incoming and outgoing, will be opened to *intercept cash, checks, and money orders.* It shall be read, censored or rejected based on content and for *security reasons*. It will be inspected for *contraband*. The exception will be legal mail which is opened in the presence of the inmate.

Dkt. 32-3, p. 68.

According to the Inmate Handbook, inmates are to be "promptly" notified when their mail is withheld. Mr. Rodgers did not notify Mr. Davenport that the letter addressed to "Cuz and Cuz" had been returned for insufficient postage and he did not notify Mr. Davenport that the letter addressed to Ms. Davenport had not been deposited in the U.S. Mail. Notifying inmates that their mail has been withheld was not, however, part of Mr. Rodger's job; it was the responsibility of the Special Investigation Unit.

Although neither Mr. Rodgers nor anyone with the Special Investigation Unit notified Mr. Davenport that the two letters had been forwarded to the Marion County Prosecutor, Mr. Davenport discovered that fact on October 25, 2011, when his criminal defense attorney informed

him that the Marion County Prosecutor's Office had produced the two letters in discovery. On October 26, 2011, Mr. Davenport filed an inmate grievance with the Jail complaining that the two letters had been forwarded to the Marion County Prosecutor without a court order. On October 31, 2011, Lieutenant James Walterman responded to Mr. Davenport's grievance as follows:

> As described in the Inmate Handbook on pages 22 & 23, all mail for inmates shall be read, censored, or rejected based on content and for security reasons. If we are advised by the courts that an inmate's mail may contain any matter that could either hinder witnesses or obstruct the courts from lawfully trying a case, we do have the ability to check the mail for any improprieties.

Dkt. 1-1, p. 6.

Dissatisfied with Lieutenant Walterman's response, Mr. Davenport filed a second inmate grievance on November 3, 2011. In that grievance, Mr. Davenport complained that his two letters did not violate any provisions of the Inmate Handbook and that it was Mr. Rodgers who had violated the Inmate Handbook. On November 7, 2011, Major Royce Cole responded to the second grievance as follows:

> The mail officer has the right to read any incoming mail, with the exception of legal mail, and if the context of that letter had valuable information then he is required to pass that on up his chain of command. In your case it was sent all the way to the prosecutor.

Dkt. 1-1, p. 15.

When Mr. Davenport's complaints about Mr. Rodger's conduct with respect to the two letters persisted, the Marion County Sheriff's Office Division of Internal Affairs asked Detective Sergeant Brooks Wilson to look into the matter. After doing so, Detective Sergeant Wilson personally met with Mr. Davenport and spent an hour with him trying to explain to him that Mr. Rodgers had not violated any rules and in fact was doing his job.

Mr. Davenport's criminal case went to trial on September 12, 2012. At trial, Mr. Davenport's lawyer tried to prevent the Marion County Prosecutor from presenting the two letters

to the jury as evidence, but was unsuccessful. Dkt. 32-3, p. 38. The jury convicted Mr. Davenport of the crimes with which he was charged. Mr. Davenport felt that because the two letters were, for all practical purposes, written confessions, they never should have come into evidence at his criminal trial, and he was wrongfully convicted because of them. Dkt. 32-4, p. 10.

Mr. Davenport appealed his conviction to the Indiana Court of Appeals. On direct appeal, the Indiana Court of Appeals held that Mr. Davenport did not have a Fourth Amendment expectation of privacy in his mail while at the Jail and the Jail had an interest in searching and reading inmate mail for security reasons. The court concluded that the two letters were properly admitted into evidence at trial. *Davenport v. State*, 995 N.E.2d 1088, 2013 WL 5659477, *4-6 (Ind. Ct. App. 2013).

*B. Analysis*

"The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail." *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999). Such rights, however, are not unlimited. "Prison regulations or practices affecting a prisoner's receipt of non-legal mail also implicate First Amendment rights and must be reasonably related to legitimate penological interests." *Id.*; *see Turner v. Safley*, 482 U.S. 78, 89 (1987) (restrictions on prisoners' constitutional rights are valid if they are reasonably related to legitimate penological interests). In reviewing restrictions on prisoners' First Amendment rights, courts "accord substantial deference to the professional judgment of prison administrators" in "defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Jail officials have the right to inspect and read pretrial detainees' incoming and outgoing non-legal mail, as long as there is a reasonably related legitimate penological interest. *Rowe,* 196 F.3d at 782. It is undisputed that the

letters at issue in this case were not legal mail.

Mr. Davenport argues that there was no legitimate penological reasons for his letters to be inspected and read. He argues that according to the Inmate Handbook, inmate mail can be opened and read *only* to *intercept money*, find *contraband,* or for *security reasons.* Mr. Davenport contends that his letters did not contain money or contraband, nor did they involve the safety and security of the Jail and, therefore, his constitutional rights were violated. The Inmate Handbook, however, does not create constitutional rights. A regulation authorizing mail censorship is constitutional if it "furthers one or more of the substantial governmental interests of security, order, and rehabilitation." *Procunier v. Martinez,* 416 U.S. 396, 413-14 (1974). Mr. Davenport's narrow view of what constitutes "jail security" is not the standard by which his First Amendment rights are determined. "[T]he legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence. Perhaps the most obvious example of justifiable censorship of prisoner mail would be refusal to send or deliver letters concerning escape plans or containing other information concerning proposed criminal activity, whether within or without the prison." *Id.* at 412-13. The Seventh Circuit has approved of prison officials examining inmates' outgoing mail "to ensure that the mail does not interfere with the orderly running of the prison, contains no threats, and does not facilitate criminal activity." *United States v. Whalen,* 940 F.2d 1027, 1035 (7th Cir. 1991). Mr. Davenport had attempted to encourage criminal activity on the part of his girlfriend and to hide his own criminal activity by telling his girlfriend in a letter to perjure herself at his trial.[1] Mr. Rodgers was alert to Mr. Davenport's attempt to facilitate criminal activity, and reading Mr. Davenport's outgoing and returned mail did

---

[1] Even though Mr. Davenport was not given notice that his letters were forwarded to law enforcement in accordance with Jail policy, "this does not amount to a constitutional violation." *Grissette v. Ramsey,* 81 Fed.Appx. 67, 68 (7th Cir. Oct. 23, 2003) (citing *Rowe v. DeBruyn,* 17 F.3d 1047, 1051 (7th Cir. 1994)).

not violate Mr. Davenport's First Amendment rights.

The next question is whether mail clerk Mr. Rodgers had the right to forward the letters he inspected to his superiors at the Special Investigation Unit, who then forwarded the letters to the Marion County Prosecutor's Office.[2] Mr. Davenport argues that forwarding his letters to investigators served no legitimate penological interest. He has provided no persuasive or applicable caselaw in support of this position.[3]

In a case in which a jail inmate awaiting trial wrote letters to family and friends in which he confessed to and described the crime, the Fifth Circuit Court of Appeals held that "[g]iven that jail officials could legitimately read Busby's mail, we do not think that the First Amendment would bar them from turning letters over to the prosecutors if the jailers happened to find valuable evidence during their routine monitoring." *Busby v. Dretke,* 359 F.3d 708, 721 (5th Cir. 2004). "What has happened here is essentially that agents of the state 'overheard' a damaging admission during the course of their duties. Whatever other legal challenges may exist regarding the jailers informing investigators of what they learned, we do not see how the First Amendment would prevent them from passing that information along." *Id.* The Fifth Circuit noted that the prison officials were not "punishing" the inmate for his speech, "and while it is true that his speech had damaging consequences, that is true of all admissions and confessions." *Id.* The *Busby* court's reasoning is consistent with Supreme Court law finding a legitimate reason for reading and refusing to send inmate mail that contained proposed criminal activity within or without the prison. *Procunier,* 416 U.S. at 412-13. This caselaw compels a finding that Mr. Rodgers did not violate

---

[2] Mr. Davenport's contention that Mr. Rodgers gave the letters directly to the Marion County Prosecutor's Office is not supported by admissible evidence, nor would such an act have violated the First Amendment, as concluded in this Entry.
[3] The "memorandum of law" Mr. Davenport filed on February 17, 2015, was not timely or authorized, nor do any of the cases cited change the outcome of this case.

the First Amendment by passing along Mr. Davenport's incriminating letters to law enforcement investigators.[4]

## IV. Conclusion

Mr. Davenport has not identified a genuine issue of material fact as to his claim that Mr. Rodgers violated his First Amendment rights. Therefore, Mr. Rodgers' motion for summary judgment [dkt. 30] is **GRANTED.** Judgment consistent with this Entry and with the Entry of December 16, 2013, shall now issue.

**IT IS SO ORDERED.**

Date: February 23, 2015

_signature_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

David Davenport, DOC #904991
Putnamville Correctional Facility
Inmate Mail/Parcels
1946 West U.S. 40
Greencastle, IN 46135-9275

Electronically registered counsel

---

[4] Because the Court does not find a constitutional violation, there is no need to discuss the defendant's additional defense of qualified immunity.